UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JASON SCOTT, individually and on behalf of all
Others similarly situated, Case No.: 26-cv-02256

Plaintiff,

-against-

MAXIM HAIR RESTORATION, LLC.,

Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAXIM HAIR RESTORATION, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)**

**MARSHALL DENNEHEY, P.C.**

Nicholas P. Chrysanthem, Esq.
Maria Nudelman, Esq.
*Attorneys for Defendant*
*Maxim Hair Restoration, LLC*
Wall Street Plaza
88 Pine Street 29th Floor
New York, New York 10005
(212) 376-6574
npchrysanthem@mdwcg.com
mmnudelman@mdwcg.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......iii

PRELIMINARY STATEMENT ......1

BACKGROUND ......1

I. Plaintiff's Allegations......1

II. Plaintiff Consented to Maxim's Terms and Conditions and Privacy Policy When He Accessed Maxim's Website......3

LEGAL STANDARD ......5

ARGUMENT ......7

I. Plaintiff Fails to Establish Article III Standing Due to Lack of Concrete Injury......7

II. Plaintiff's Consent Bars His Claims......10

III. Plaintiff Fails to State Any of His Claims......12

A. Plaintiff Does Not State an ECPA Claim ......12

B. Plaintiff's FSCA Claim Fails Because the Complaint Does Not Allege Interception of the Substance of any Communication......13

C. Plaintiff Fails to State a Claim for Negligence......14

D. Plaintiff Fails to State a Claim under the Florida Deceptive and Unfair Trade Practices Act ......16

E. Plaintiff Fails to State a Claim for Unjust Enrichment......17

F. Plaintiff Fails to State a Claim for Common Law Invasion of Privacy (Florida Law)......19

CONCLUSION......20

# TABLE OF AUTHORITIES

**Cases**

*Alice v. Wise Foods, Inc.,* 2018 US Dist LEXIS 54009 (S.D.NY Mar. 27, 2018) ........................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 5, 6, 15, 17

*Aubrey v. New Sch*., 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022)................................................... 7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 570 (2007) ................................................................... 6

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc*., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) ........................................................................................................................ 16

*Bowen v Women's Care Florida LLC*, 2026 US Dist LEXIS 173281, at *29 (MD Fla Aug. 4, 2026)…………………………………………………………………………….20

*Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002)............................................ 3, 6

*City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)................................ 16

*Corsello v. Verizon N.Y., Inc*., 967 N.E.2d 1177, 1186 (N.Y. ...................................................... 18

*C.M. v MarinHealth Med. Group, Inc.,* 2024 US Dist LEXIS at *5 (N.D. Cal. Jan. 19, 2024)…18

*D'Antonio v CNN, Inc*., 2026 US Dist LEXIS 78088, at *8 (S.D.N.Y. Apr. 9, 2026) .................... 5

*Dashnau v. Unilever Mfg. (US), Inc*., 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) ....................... 19

*DiFolco v MSNBC Cable L.L.C*., 622 F3d 104, 111 (2d Cir. 2010) ............................................... 3

*Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) ......................................................... 5

*E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018)........................ 17, 18

*Fernandez v. Fernandez*, 189 N.Y.S.3d 538, 541 (2d Dep't 2023)............................................. 14

*Gaeta v Home Box Off*., 169 Misc 2d 500, 502 (New York County 1996) ................................. 19

*Goldstein v Costco Wholesale Corp*., 559 F Supp 3d 1318, 1322 (SD Fla 2021)........................ 13

*Howell v. New York Post Co*., 612 N.E.2d 699, 703 (N.Y. 1993) ................................................ 18

*IDT Corp. v. Morgan Stanley Dean Witter & Co*., 907 N.E.2d 268 (N.Y. 2009)………………..18

*In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 987-88 (N.D. Cal. 2014)………..20

*In re Nickelodeon Consumer Privacy Litig.*, 2014 US Dist LEXIS 91286, at *53 (DNJ July 2, 2014)………………………………………………………………………………..13

*In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)……………………………………………6

*In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107 (9th Cir. 2014) ........................................ 12

*Javier v. Assurance IQ, LLC*, 2021 U.S. Dist. LEXIS 48777, at *4 (N.D. Cal. Mar. 9, 2021)......11

*Kaplan v. Lebanese Can. Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ...................................... 5

*Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) ........................ 16

*Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025) ................................. 9

*Konig v TransUnion, LLC,* 2023 US Dist LEXIS 68577, at *21-22 (S.D.N.Y Apr. 13, 2023) ...... 9

*Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)……………………14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992) ................................... 5

*Lynch v. City of New York,* 952 F.3d 67, 74 (2d Cir. 2020)........................................................... 6

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ....................................................... 6

*Marrache v Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1089 (11th Cir. 2021) ..................................... 17

*Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145 (2d Dep't 2005) ......................................................................................................................... 18

*Orozco v. Fresh Direct, LLC,* 2016 U.S. Dist. LEXIS 133296 at *15 (S.D.N.Y. Sep. 27, 2016) ... 7

*Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016) ........................... 14

*Pena v Br. Airways, PLC (UK),* 2020 US Dist LEXIS 60361, at *7 (E.D.N.Y. Mar. 30, 2020)... 10

*Perry v. Rockmore*, 2025 NY Slip Op 01141, 238 A.D.3d 67 (3d Dep't 2025)..................... 18, 19

*Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. 3d DCA 2023)………………...19

*Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) .......................... 6

*Razuki v. Caliber Home Loans, Inc.*, 2018 U.S. Dist. LEXIS 196070 (S.D. Cal. Nov. 14, 2018) ..9, 10

*Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1332 (S.D. Fla. Nov. 3, 2020)………..19

*Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006) 16

*Santana v. Leith*, 985 N.Y.S.2d 147, 149 (2d Dep't 2014) 15

*Sisti v Bosley Inc.*, 2026 US Dist LEXIS 105590, at *7 (CD Cal Apr. 27, 2026) 8, 12

*Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011)……………………………19

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540 (2016) 5, 7, 8

*St.-Works Dev. LLC v. Richman,* 2015 U.S. Dist. LEXIS 28291 (S.D.N.Y. Feb. 3, 2015) 15

*TransUnion LLC v. Ramirez*, 595 U.S. 413, 430-31, 141 S. Ct. 2190 (2021) 7

*W.W. v Orlando Health, Inc.*, 2025 US Dist LEXIS 40038, at *28 (MD Fla Mar. 6, 2025)…………………………………………………………………………......19

*Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267-68 (S.D. Fla. 2015)…………………...20

*Whiteside v. Hover- Davis,* 995 F.3d 315, 323-324 (2d Cir. 2021) 6

*Williams v Affinion Group, LLC,* 889 F3d 116, 119 (2d Cir. 2018) 11

*Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022)………………..9

**Statutes**

18 U.S.C. § 2511……………………………………………………………………10

Fed. R. Civ. P. 12(b)(1)…………………………………………………………………5, 7

Fed. R. Civ. P. 12(b)(6)……………………………………………………………1, 5, 15, 17

Fla. Stat. § 934.02 13

## PRELIMINARY STATEMENT

Courts across the country are confronting a wave of putative class actions challenging companies' routine use of widely adopted web-analytics tools—asserting, often without basis, that such tools amount to unlawful wiretapping or improper disclosure of personal information. This case is no different. Plaintiff alleges that Defendant, Maxim Hair Restoration, LLC ("Maxim") disclosed certain information to Meta Platforms, Inc. ("Meta") and TikTok Inc. ("TikTok") through standard tracking pixels embedded on Maxim's website (the "Website"). According to the First Amended Class Action Complaint ("Compl.") ¶¶ 17, 21, Plaintiff contends that when he visited the Website and scheduled a hair-transplant consultation, Maxim transmitted that fact to Meta and TikTok.

Plaintiff's claims suffer from three fundamental defects. First, he lacks Article III standing because he alleges no concrete injury cognizable under any of the statutes or common-law theories he invokes. Second, even if he could establish standing, his claims fail because he expressly consented to the very disclosures that he now challenges. Third, each cause of action is independently deficient under Fed. R. Civ. P. 12(b)(6) for multiple reasons. Plaintiff's claims should be dismissed.

## BACKGROUND

### I. Plaintiff's Allegations

Plaintiff alleges that on June 19, 2025, he used the Website's "Free Consultation Form" to schedule a hair-restoration consultation, providing his name, phone number, email address, and location in doing so. Compl. ¶ 12. He further alleges that, at the time, he maintained a Meta account with an associated profile and Facebook ID ("FID") (*id.* ¶ 13), as well as a TikTok account and profile (*id.* ¶ 17), and that he had provided both platforms with his name, birthday, email address, and phone number when creating those accounts. *Id.* ¶¶ 14, 18. Plaintiff claims that, unbeknownst

to him, the Website contained online tracking pixels that transmitted information to third parties—including Meta and TikTok—when users submitted consultation requests through the Free Consultation Form. *Id.* ¶ 7. His core allegation is that, when he scheduled his consultation, Maxim disclosed to Meta and TikTok unique identifiers enabling those platforms to identify him, the fact that he sought a consultation with a hair-transplantation clinic, and other unspecified "information about Plaintiff and the device he used to schedule the consultation." *Id.* ¶¶ 15, 19.

Plaintiff's claims are premised entirely on Maxim's supposed transmission to Meta and TikTok of (1) the user's Facebook ID and TikTok ID; and (2) various pieces of "Event Data," consisting of transmissions reflecting the fact that Plaintiff filled out the free consultation form on the Website, and clicked the "Submit" button. *See id.* ¶¶ 72-89 (Meta), 116-127 (TikTok). However, Plaintiff does not allege that Maxim captured and transmitted the information Plaintiff input into Maxim's free consultation form. Rather, the Complaint alleges only that the pixels on Maxim's website captured and transmitted Plaintiff's unique Meta and TikTok identifiers, along with data reflecting the fact that Plaintiff had filled out Maxim's consultation form (not data conveying the information provided therein).[1] *See id.* ¶ 94 ("At all times relevant hereto, whenever any person made an appointment through the Website, Defendant disclosed to Meta (*inter alia*) the fact that the person made an appointment with one of Defendant's hair transplantation clinics and the FID of the person who made the appointment.").

Based on these allegations, Plaintiff is asserting the following causes of action (i) violation of the Electronic Communications Privacy Act ("ECPA"), (ii) violation of the Florida Security of

---

[1] For example, Plaintiff provides screenshots purporting to show that, when a user fills out the Website's free consultation form—thereby inputting his name, email address, phone number, and street address—and then clicks the "Submit" button, a "Lead" event is triggered and transmitted to Meta, signifying the fact that the form has been filled out. Crucially, as shown in Plaintiff's screenshots, the "Lead" event does not include any of the personal information that the user actually entered into the form. *See* Compl. ¶¶ 75-83. Plaintiff's allegations about transmissions to TikTok are substantively identical. *See id.* ¶ 121 (screenshot of a "Advanced Matching" event allegedly transmitted to TikTok, containing none of the information actually entered into the scheduling form).

Communications Act ("FSCA"), (iii) negligence, (iv) violation of the Florida Deceptive and Unfair Trade Practices Act, (v) unjust enrichment, and (vi) invasion of privacy (Florida law).

Plaintiff filed an initial class action complaint on March 19, 2026. Defendant filed a motion to dismiss the compliant on June 25, 2026. Plaintiff filed the First Amended Class Action Complaint on July 16, 2026.

**II. Plaintiff Consented to Maxim's Terms and Conditions and Privacy Policy When He Accessed Maxim's Website**

Plaintiff alleges that he never "consented, agreed, authorized, or otherwise permitted Defendant to disclose his Private Information" to Meta or to TikTok. Compl. ¶¶ 16, 20. Contrary to those bald assertions, verifiable facts show that all users of the Website—including Plaintiff—provide consent to the use of third-party tracking pixels by being on the Website.[2]

As the Complaint explains, "[t]o schedule a consultation with one of Defendant's hair transplantation clinics, patients navigate to the Website and click on the 'Free Consultation" link. *Id.* ¶ 74. This leads the user to a form which permits them to request a consultation with a hair transplantation clinic through the Website. *Id.* ¶ 75. The bottom of the Website provides hyperlinks to the Terms and Conditions and the Privacy Policy. *See* Ex. A (page from the Website), Ex. B (Terms and Conditions), and Ex. C (Privacy Policy). This was the version of the Privacy Policy and Terms and Conditions in place when Plaintiff used the Website on June 19, 2025.

The Terms and Conditions explicitly state that any use of Maxim's website is also "governed by [the] Privacy Policy, which is incorporated into [the] Terms by reference." It

[2] As set forth below the Court may take judicial notice of Maxim's Website because its authenticity "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and because Plaintiff's complaint refers to the website, it is central to Plaintiff's claim, and its authenticity cannot reasonably be questioned. *DiFolco v MSNBC Cable L.L.C.*, 622 F3d 104, 111 (2d Cir. 2010) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

instructs anyone visiting the website to review the Privacy Policy to understand the practices regarding the collection and use of personal information. Ex. B at pg. 4.

The Privacy Policy, in turn, explains exactly what types of information Maxim's website collects from users—including "personally identifiable information…(such as your address, phone number and other information)," the name of the domain used to access the Internet, Internet browser type and platform, the link that brought the person to the website and any links clicked within the site. *See* Ex. C (Privacy Policy).

The Privacy Policy further states that Maxim's web servers:

> "also seek (as many Web sites do) to place a 'cookie' (a small data file) which allows the server to track your visits in order to track statistical information about navigation to and throughout certain areas of our site and to promotions on other sites. This cookie is not used to obtain your name or any personal data, and the information that is tracked is used only for internal purposes, such as to improve site navigation and to measure the effectiveness of our marketing and web site…"

It further states:

> We may use a third-party technology to place our advertisements on other Web sites. This technology will install a small "cookie" file on your computer when you view our ad. These cookies will not contain any information that personally identifies you (such as your name or e-mail address) but they will contain a randomly generated number that is unique to your browser and can be recognized by a "Web beacon" (transparent GIF file) on our site if you click through to our site from one of our ads. This allows us to keep track of how many unique visitors we have to our site and from what ads they entered, so that we can measure the effectiveness of our ads and ad placements. The privacy policies of the Web sites on which we advertise, and through which the cookies are installed should inform you about the cookie, and you may of course set your browser to reject cookies. *Id*.

The Privacy Policy also explains exactly how advertising cookies are used on the Website, the purpose for such cookies, and how information is collected and disclosed by those types of cookies:

> As you browse maximhairrestoration.com, advertising cookies will be placed on your computer so that we can understand what you are interested in. Our display advertising partner, AdRoll, then enables us to present you with retargeting

> advertising on other sites based on your previous interaction with maximhairrestoration.com. The techniques our partners employ do not collect personal information such as your name, email address, postal address or telephone number. You can visit this page to opt out of AdRoll and their partners' targeted advertising.

## LEGAL STANDARD

This Court lacks subject matter jurisdiction if the Complaint fails to show that the plaintiff has standing under Article III. *See* Fed. R. Civ. P. 12(b)(1). Article III standing requires that (1) the plaintiff must have suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992) (internal quotation marks and citations omitted). A "concrete" injury "must actually exist"—in other words, it must be "real, not abstract*."* *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540 (2016). To allege a "concrete" injury sufficient to support Article III standing, courts "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *D'Antonio v CNN, Inc.*, 2026 US Dist LEXIS 78088, at *8 (S.D.N.Y. Apr. 9, 2026).

Federal Rule of Civil Procedure 12(b)(6) provides that an action must be dismissed where, as here, the complaint fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "In order to survive a motion to dismiss under Fed. R. of Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Can. Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Courts take as true "well pleaded factual allegations" but not "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks

omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft* 556 U.S. at 679; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 570 (2007) (factual allegations must cross "the line from conceivable to plausible").

"To present a plausible claim, the 'pleading must contain something more…than…a statement of the facts that merely creates a suspicion of a legally cognizable right of action.'" *Lynch v. City of New York,* 952 F.3d 67, 74 (2d Cir. 2020) (*quoting Bell Atlantic Corp.* 550 U.S. at 555). Thus also, "where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, her complaint 'stops short of the line between possibility and plausibility,' and she fails to demonstrate an entitlement to relief." *Whiteside v. Hover- Davis,* 995 F.3d 315, 323-324 (2d Cir. 2021) (*quoting Iqbal*, 556 U.S. at 678).

"In resolving a motion to dismiss . . . a district court . . . may refer" to appropriate "evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002) (citation omitted). Courts may also rely on a document or other piece of evidence where the complaint "relies heavily upon its terms and effect" thereby rendering it "'integral' to the complaint." *Id*. at 153 (citation omitted). If such documents contradict the plaintiff's allegations, "the documents control and this Court need not accept as true the [plaintiff's] allegations." *Rapoport v. Asia Elecs. Holding Co*., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). "[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (alteration in original) (citation omitted). Here, the Court can consider the Maxim website's content and accessibility because it

is incorporated by reference into the Complaint, is central to Plaintiff's allegations, and its authenticity is not in question. Fed. R. Evid. 201(b); *Orozco v. Fresh Direct, LLC,* 2016 U.S. Dist. LEXIS 133296 at *15 (S.D.N.Y. Sep. 27, 2016) (assessing the "totality" of a website "incorporated by reference" into a complaint "at the center of Plaintiff['s] allegations" in resolving a motion to dismiss). Relatedly, this Court can also take "judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022).

## ARGUMENT

### I. Plaintiff Fails to Establish Article III Standing Due to Lack of Concrete Injury

Plaintiff claims he was injured solely by filling out the Website's free consultation form, because Maxim allegedly disclosed to Meta and TikTok the fact that Plaintiff filled out the free consultation form (but not the contents of the form itself). Plaintiff has failed to allege any concrete injury. What little medical information could conceivably have been contained within the contents of the consultation request form was not disclosed to third parties. *See supra* pp. 1-2. Ultimately, Plaintiff simply cannot articulate how he was actually harmed by the data transmissions alleged in the Complaint.

On a motion under Rule 12(b)(1), "[a]s the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [he] ha[s] standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31, 141 S. Ct. 2190 (2021). Here, Plaintiff fails to establish standing under Article III because he fails to allege that he has suffered an injury in fact that is "concrete"—in other words, an injury that is "real, and not abstract." *Spokeo,* 578 U.S. at 340. Plaintiff cannot establish standing merely by alleging that Defendant violated statutory rights. *See TransUnion*,

594 U.S. at 427 ("Under Article III, an injury in law is not an injury in fact."); *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Most crucially—as explained *supra* pp. 1-2—Plaintiff's medical information was not disclosed to any third parties. Plaintiff's entire theory of injury is based on his contention that his medical information was disclosed when the Website's free consultation form transmitted "events" to third parties, despite the opposite being true, as demonstrated by the Complaint itself. *See supra* p. 2, fn. 1; Compl. ¶¶ 87-92, 122-124. This fact alone warrants dismissal of the entire Complaint for failure to allege a concrete injury. *See Sisti v Bosley Inc.*, 2026 US Dist LEXIS 105590, at *7-8 (CD Cal Apr. 27, 2026) (dismissing Plaintiff's claims because he only alleged that a website scheduling form disclosed "the fact" that Plaintiff had filled out the scheduler form to schedule a hair transplant consultation, along with "identifiers" that enabled Meta and TikTok to identify him specifically -- nothing more).

Moreover, the Complaint devotes several paragraphs to generalized statements about the value consumers place on their personal information and the policy interests enshrined in various privacy protection laws. *See, e.g*. Compl. ¶¶ 49-53. By contrast, the Complaint is remarkably sparse on details about any actual harm suffered by Plaintiff resulting from the specific practices he alleges. Instead, Plaintiff alleges generically that "Defendant violated [his] rights and invaded his statutorily conferred interest[.]" *Id*. ¶ 21. Merely alleging injuries in law, rather than injuries in fact, however, does not suffice under Article III.

Plaintiff's most complete statement of his supposed injuries is articulated in the ECPA section of his Complaint (Count I), reciting a laundry list of generalized damages purportedly suffered by him and members of the putative class. *Id*. ¶ 197. Courts have found each of these supposed injuries to be non-cognizable under similar circumstances. First, Plaintiff's bald

allegations that he suffered "emotional distress" as result of learning about the alleged disclosure is too conclusory to support a claim for damages. Courts have rejected "conclusory allegations" of mental or emotional distress as sufficient basis to establish standing. *See, e.g.*, *Konig v TransUnion, LLC,* 2023 US Dist LEXIS 68577, at *21-22 (S.D.N.Y Apr. 13, 2023) (conclusory allegations of "embarrassment, humiliation, and other emotional injuries" insufficient for Article III standing); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) ("Plaintiff does allege that he suffered 'mental and emotional pain,' however such conclusory assertions do not confer standing.")

Second, Plaintiff's allegations that Maxim received "substantial financial benefits" and "substantial, quantifiable value" from their alleged collection and use of Plaintiff's personal information—"without providing any value or benefit to Plaintiff"—fail to allege any concrete injury, because Plaintiff does not allege that any such benefits resulted in actual harm to Plaintiff. Compl. ¶ 197; *see Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025) (plaintiffs failed to allege that they "suffered economic harm because Defendant unjustly profited from the use of their data").

Third, Plaintiff's allegation that Maxim "fail[ed] to provide full value of medical services, which included duty to maintain confidentiality," fails because Plaintiff does not allege that he paid anything to Maxim for medical services—let alone that he "paid a premium for [Maxim]" to maintain confidentiality of information. Compl. ¶ 197; *see Razuki v. Caliber Home Loans, Inc.*, 2018 U.S. Dist. LEXIS 196070 (S.D. Cal. Nov. 14, 2018) (finding that plaintiff "does not provide any information to show that he paid a premium for [defendant] to provide reasonable and adequate security measures.").

Finally, courts routinely reject allegations, such as Plaintiff's, that the supposed disclosure of his personal information "diminished the value" of such information. *See, e.g. Pena v Br. Airways, PLC (UK),* 2020 US Dist LEXIS 60361, at *7 (E.D.N.Y. Mar. 30, 2020) ("assuming Plaintiff's personal information has value, Plaintiff has failed to allege any facts indicating how Defendant's data breach diminished that value in any way); *Razuki*, 2018 U.S. Dist. LEXIS 196070, at *2 (finding that "claim alleging diminution of value of [plaintiff's] personal data fails to allege enough facts to establish how his personal information is less valuable as a result of the breach"). Thus, Plaintiff fails to establish standing under Article III and for that reason alone, all of his claims should be dismissed.

## II. Plaintiff's Consent Bars His Claims

Plaintiff's claims turns, in part, on lack of consent. Plaintiff's consent to Maxim's use of tracking pixels provides either a statutory defense or precludes him from plausibly alleging essential elements of his claims.

- ECPA: The ECPA prohibits the unauthorized "interception" of an "electronic communication," but authorizes interception of communications where "one of the parties to the communication has given prior consent to such interception," provided the interception is not "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(1)(a)-(e); *see also* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to intercept a wire, oral, or electronic communication where . . . one of the parties to the communication has given prior consent to such interception.").
- The Florida Consumer Protection Act: Plaintiff fails to allege a false or deceptive practice because the use of tracking pixels was disclosed to him, and he likewise, cannot

allege that he had any reasonable expectation of privacy with respect to the information disclosed.

- Negligence: Plaintiff cannot establish that Maxim breached any legal duty owed to him, because he consented to the conduct he now claims was negligent.
- Unjust Enrichment: Plaintiff cannot prevail on an equitable claim for unjust enrichment because his consent to Maxim's use of tracking pixels forecloses any claim that Maxim "unjustly" retained benefits from such conduct.
- Invasion of Privacy- Intrusion Upon Seclusion: Plaintiff cannot prevail on an invasion of privacy claim if he voluntarily provided the information, or voluntarily interacted with a system that collects or transmits data,

The Court should dismiss the Complaint on this basis alone, because Plaintiff was informed of, and consented to, the use of cookies and pixels on Defendant's website. Where lack of consent is an element of the claim, it is appropriate for the court to consider factual matters relating to consent on a motion to dismiss. *See, e.g. Williams v Affinion Group, LLC,* 889 F3d 116, 119 (2d Cir. 2018) (concluding that because appellants failed to raise any material issues as to whether they consented in the membership programs, the prohibitions of the Electronic Communications Privacy Act do not apply.); *Javier v. Assurance IQ, LLC*, 2021 U.S. Dist. LEXIS 48777, at *4 (N.D. Cal. Mar. 9, 2021) (explaining that "consent generally defeats privacy claims").

The Complaint contains a handful of conclusory allegations that Plaintiff and the putative class members did not consent to the alleged disclosure of the information at issue. *See, e.g.*, Compl. ¶¶ 213-275. Realizing that consent defeats his claims, Plaintiff scatters various allegations across the Complaint that his personal information was disclosed to Meta and Facebook "without consent." *See, e.g.*, Compl. ¶¶ 142 (alleging Plaintiff had a "reasonable expectation that the

information would remain confidential and that Defendant would not share [it] with third parties for a commercial purpose unrelated to patient care."). None of these perfunctory allegations rise beyond the level of boilerplate, formulaic recitations of the "lack of consent" elements of the various statutes under which Plaintiff asserts claims. Defendant's Privacy Policy and Terms and Conditions squarely contradict Plaintiff's rote allegations of lack of consent.

## III. Plaintiff Fails to State Any of His Claims

### A. Plaintiff Does Not State an ECPA Claim

The ECPA requires a plaintiff to plausibly allege that the defendant intercepted the *contents* of a communication, not just record or identifying information like webpage addresses and Facebook IDs. *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding that allegations that defendants intercepted plaintiff's Facebook ID information and the webpages of addresses they accessed insufficient to allege "contents of any communication" under ECPA). As stated above, Plaintiff does not allege that any "content" from the submitted free consultation form including Plaintiff's name, email, or any actual content from that form was sent to Meta or Tiktok. *See supra* 1-2. Plaintiff alleges that the Maxim website discloses the Protected Health Information and Personally Identifiable Information of its visitors if they use the free consultation request form. However, the Complaint only actually alleges that the pixels on Maxim's website captured and transmitted Plaintiff's unique Meta and TikTok identifiers, along with data reflecting the fact that Plaintiff had filled out Maxim's consultation form (not data conveying the information provided therein). The allegations are not sufficient to plausibly allege that Defendant impermissibly intercepted the "contents of communication" as required to state a claim under the ECPA. *Sisti,* 2026 US Dist LEXIS 105590 at *7 ("Plaintiff does not allege that [Defendant] shared his name, email address, home address, or any other information he entered on the scheduler page, with Meta or TikTok. Instead, Plaintiff alleges only that [Defendant] disclosed 'the fact' that Plaintiff had

filled out [the] scheduler form, along with "identifiers" that enabled Meta and TikTok to identify him specifically."); *In re Nickelodeon Consumer Privacy Litig*., 2014 US Dist LEXIS 91286, at *53 (DNJ July 2, 2014) (The Wiretap Act claim must fail because there are no allegations that Defendants intercepted "contents" of communications, as required by the Act). Plaintiff's ECPA claim must be dismissed.

### B. Plaintiff's FSCA Claim Fails Because the Complaint Does Not Allege Interception of the Substance of any Communication

Similarly, Plaintiff's FSCA claim also fails because Plaintiff does not plead facts alleging that any "content" was intercepted by the pixel technology when he input his information into the free consultation form. To avoid dismissal, Plaintiff must have alleged that Defendant intercepted "the intended message conveyed by the communication" that revealed "the substance, purport, or meaning of [that] communication." Fla. Stat. § 934.02(7); *Goldstein v Costco Wholesale Corp*., 559 F Supp 3d 1318, 1322 (S.D. Fla. 2021). In *Goldstein v. Costco Wholesale Corporation*, the court held allegations just like Plaintiff's failed to state a claim because the alleged tracking of "(1) [plaintiff's] movements on the website ('mouse clicks and movements,' 'scroll movements,' and 'pages and content viewed') and (2) information voluntarily input ('keystrokes,' 'copy and paste actions,' 'search terms,' and 'information inputted by Plaintiff,'" "did not convey the substance of any communication." 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). "Rather, this mere tracking of Plaintiff's movements on Defendant's website" is expressly excluded from FSCA's reach by the statutory exception for "an electronic or mechanical device which permits the tracking of the movement of a person or an object," including "virtual rather than physical" tracking. *Id*. (*quoting* Fla. Stat. § 934.02(12)(c)). "Just because Plaintiff intended to communicate with Defendant's website…does not mean his communications revealed any substance. They did not." *Goldstein*, 559 F Supp 3d at 1322.

### C. Plaintiff Fails to State a Claim for Negligence

Plaintiff's negligence claim fails because Plaintiff's factual allegations all plead intentional conduct—not negligence, because Plaintiff fails to plead a duty, and because Plaintiff fails to plead damages. Compl. *at passim*. The elements of a negligence claim under New York law are: "(1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc*., 280 F.3d 209, 215 (2d Cir. 2002).

When, as here, a complaint is "premised only on allegations of intentional conduct," those allegations "cannot form the basis of a negligence claim" under New York Law. *Fernandez v. Fernandez*, 189 N.Y.S.3d 538, 541 (2d Dep't 2023). While Plaintiff theoretically can plead in the alternative, in order to do so, Plaintiff has to plead facts sufficient to state the cause of action. Plaintiff has not alleged any facts supporting a claim for negligence because Plaintiff instead only pleads intentional misconduct by the Defendant. *See* Compl. ¶ 7 ("By installing the tracking pixels. Defendant knowingly and intentionally disclosed to Meta and TikTok its patients' health data and other highly sensitive information. . ."); *see also, e.g*., *id*. ¶ 238 ("Defendant knowingly and intentionally concealed, suppressed, and omitted material facts in connection with its disclosure of Plaintiff's and the Florida Subclass members' private communications by, among other things, failing to disclose that it intentionally incorporated third party analytics and advertising tracking technology on the Website); *id*. ¶ 184 ("Defendant intentionally permitted the interception, caused the interception, aided the interception, facilitated the interceptions, and procured persons (including Meta and TikTok) to intercept Plaintiff's and the putative class members' electronic communications via the tracking pixels…"); *id*. ¶ 191 ("Defendant intentionally used wire or electronic communications, and intentionally engaged third parties such as Meta and TikTok to use wire or electronic communications…"). In other words, even if Plaintiff

could plead negligence in the alternative, he failed to do so. *See Santana v. Leith*, 985 N.Y.S.2d 147, 149 (2d Dep't 2014) (dismissing negligence claim "premised on intentional conduct and not negligence" where "no allegations of negligence appear in the pleadings" (cleaned up)). Plaintiff fails to state a claim for negligence.

Moreover, Plaintiff fails to plausibly allege a breach of any legal duty owed to him by the Defendant. As explained *supra* pp. 2-4, Plaintiff affirmatively authorized the disclosure of his information to third parties via tracking pixels on The Website

Plaintiff also fails to plausibly allege any harm sufficient to satisfy the damages element of his negligence claim. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016) (noting elements of negligence include "injury proximately resulting" from alleged negligent acts). In alleging his negligence claim, Plaintiff alleges only that the disclosure of his personal information would foreseeably "result in injury." Compl. ¶ 228. That sort of "[t]hreadbare recital of the elements" of Plaintiff's negligence claim "do[es] not suffice" under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Plaintiff states that Plaintiff and the putative class members are entitled to compensatory, nominal, and/or punitive damages without listing any actual ways that Plaintiff or the putative class was damaged. Compl. ¶ 229. All Plaintiff's assertions of damages are conclusory, unsupported by factual allegations of cognizable harm, and thus legally insufficient. *See St.-Works Dev. LLC v. Richman,* 2015 U.S. Dist. LEXIS 28291 (S.D.N.Y. Feb. 3, 2015) (dismissing claim where pleading "failed plausibly to allege . . . damages" because allegation was "conclusory" and claimed damages that were "not recoverable"). As such, because Plaintiff has failed to plead the elements of damages, in the alternative or otherwise, his negligence claim fails.

### D. Plaintiff Fails to State a Claim under the Florida Deceptive and Unfair Trade Practices Act

To establish a cause of action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), a plaintiff must sufficiently allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kertesz v. Net Transactions, Ltd*., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (*quoting City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc*., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (*quoting Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

Plaintiff cannot state a claim for violation of the FDUTPA, because he cannot plausibly allege "[f]ailure to disclose material facts that deceive or tend to deceive consumers." Plaintiff's theory under the FDUTPA is that Defendant "fail[ed] to state and knowingly conceal[ed], suppress[ed], and omitt[ed] the material fact that Defendant was disclosing Plaintiff's . . . private communications to third parties." Compl. ¶ 236. This was allegedly a "material fact" because of consumers' expectations that "this type of information would remain private." *Id*. ¶ 237. The practices that Plaintiff alleges however, were fully disclosed to him through Maxim's Terms and Conditions and Privacy Policy. As such, there can be no deception, nor can Plaintiff have had any expectation that his activity on the Website would remain private. Similarly defective is Plaintiff's allegation that he "had no way of discerning Defendant's concealment . . . of [] material facts" because he "did not have access to Defendant's exclusive and superior knowledge" about the use of third party analytics and advertising tracking technology. Compl. ¶ 242. Discovery of that fact

required no "exclusive and superior knowledge"—it required only that that the Plaintiff view the Privacy Policy. *See supra* pp. 3-5.

Plaintiff's FDUTPA claim must also be dismissed because Plaintiff fails to allege any ascertainable injury or loss. Actual damages under FDUTPA are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A plaintiff, however, cannot state a cause of action under FDUTPA if the consumer fails to plead that they suffered actual damages. The members of a putative class who experienced no actual loss have no claim for damages under FDUTPA. FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment. *Marrache v Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1089 (11th Cir. 2021). Plaintiff alleges summarily that he "suffered ascertainable loss including, among other things, improper taking of [his] valuable data." Compl. ¶ 244. This type of "threadbare" recital of the elements of his FDUTPA claim does not suffice under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Further, as explained *supra* p. 10, Plaintiff fails to allege that any "valuable" information was disclosed when any sensitive or medical information contained within the scheduling form was never transmitted to third parties. Plaintiff's FDUTPA claim must be dismissed.

### E. Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim fails because, even taking as true Plaintiff's conclusory allegation that Maxim was "enriched," the allegations do not and cannot maintain that Maxim was enriched "at [Plaintiff's] expense." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018) (requiring plaintiffs to show "that (1) the other party was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit [the other party] to retain

what is sought to be recovered" to state a claim for unjust enrichment). Any conclusory assertion that Plaintiff's expense was the "diminished value" of their private information is in no sense plausible (or even credible) because Plaintiff has pleaded no facts in support of such a claim. *See e.g.*, Compl. ¶ 197.

Thus, even if Maxim were somehow "enriched" (not at Plaintiff's expense), that is not enough to state an unjust enrichment claim. *See Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 790 N.Y.S.2d 143, 145 (2d Dep't 2005) ("[A] plaintiff's allegation that [a defendant] received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment."). Plaintiff has not explained, nor can he, how Maxim was enriched at Plaintiff's expense, since Plaintiff does not plausibly allege Maxim received anything of value from Plaintiff directly. *See E.J. Brooks Co*., 105 N.E.3d at 312 (applying *IDT Corp. v. Morgan Stanley Dean Witter & Co*., 907 N.E.2d 268 (N.Y. 2009)) ("Though Morgan Stanley may have been enriched, and though IDT may have been injured in other ways, recovery of the third-party fees was denied because there was no impairment of any preexisting right to the fees."); *cf. C.M. v MarinHealth Med. Group, Inc.,* 2024 US Dist LEXIS*,* at *5 (N.D. Cal. Jan. 19, 2024) (finding it "incongruous for plaintiff to allege an injury . . . based on lost value of sensitive healthcare data" when "plaintiff apparently do not want Meta or anyone" else to have the data and did not "intend[]to participate in this market, or otherwise to derive economic value from their PII" (cleaned up)).

Further, New York courts make clear that unjust enrichment "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc*., 967 N.E.2d 1177, 1186 (N.Y. 2012). And "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces,

a conventional contract or tort claim." *Id*. That is precisely what Plaintiff has done, by pleading unjust enrichment as a backstop claim that duplicates his core (albeit legally insufficient) theory of privacy intrusion. *See Dashnau v. Unilever Mfg. (US), Inc*., 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (dismissing plaintiffs' unjust enrichment claim for being "duplicative of their core theory of deception") (internal quotation omitted); *see also Alice v. Wise Foods, Inc.,* 2018 US Dist LEXIS 54009 (S.D.NY Mar. 27, 2018) (dismissing unjust enrichment claim as a "mere regurgitation" of those allegations made with respect to plaintiffs' other claims). Accordingly, Plaintiff's unjust enrichment claim should be dismissed for failure to state a viable claim.

**F. Plaintiff Fails to State a Claim for Common Law Invasion of Privacy (Florida Law)**

Plaintiff's invasion of privacy claim is a claim for intrusion upon seclusion as opposed to to public disclosure of a private fact. Compl. ¶ 258. To allege intrusion, "[f]irst, there must be a private quarter. Second, there must be some physical or electronic intrusion into that private quarter. Third, the intrusion must be highly offensive to a reasonable person." *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1332 (S.D. Fla. Nov. 3, 2020) (quotation omitted). "Florida law explicitly requires an intrusion into a private place and not merely into a private activity." *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. 3d DCA 2023); *see also Spilfogel v. Fox Broad. Co*., 433 F. App'x 724, 727 (11th Cir. 2011) (same). Plaintiff alleges that "Defendant intentionally intruded upon Plaintiff's and Class members' solitude, seclusion, and private affairs or concerns when they disclosed Plaintiff's and Class members' private communications, including Private Information, to third parties through the third party analytics and advertising tracking technology they incorporated on the Website." Compl. ¶ 260. Website browsing is a private activity, not a private place. See *W.W. v Orlando Health, Inc.*, No: 6:24-cv-1068-JSS-RMN, 2025 US Dist LEXIS 40038, at *28 (MD Fla Mar. 6, 2025) (dismissing intrusion upon seclusion based

on private activity of website browsing). *See also*, *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267-68 (S.D. Fla. 2015) ("The [defendant]'s accessing of [the plaintiff]'s driver's license information in the [Driver and Vehicle Information Database] system is likewise not an intrusion into a 'place.'"). Thus, Plaintiff cannot establish the first prong of an intrusion upon seclusion claim.

Similarly, the conduct alleged in this case is not highly offensive. *See In re Google, Inc. Priv. Pol'y Litig*., 58 F. Supp. 3d 968, 973, 987-88 (N.D. Cal. 2014) (tracking a web user's "identifying information, browsing habits, search queries" not highly offensive, because there is "a high bar for the requisite intrusion that is highly offensive to a reasonable person"); *Bowen v Women's Care Florida LLC*, 2026 US Dist LEXIS 173281, at *29 (MD Fla Aug. 4, 2026) (adopting argument that Plaintiff's allegations that Defendant's website transmitted sensitive health information to third-party collectors based on the technologies embedded on the website does not constitute highly offensive conduct which independently supports dismissal of the invasion of privacy claim). On this point too, Plaintiff's common law invasion of privacy claim fails and should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff cannot state any valid claims against Defendant, and Maxim respectfully requests that the Court grant this Motion and dismiss the Plaintiff's Complaint in its entirety.

Dated: New York, New York
August 6, 2026

Respectfully Submitted,

MARSHALL DENNEHEY, P.C.

By: */s/ Maria Nudelman*

Nicholas P. Chrysanthem, Esq.
Maria Nudelman, Esq.
*Attorneys for Defendant*
*Maxim Hair Restoration, LLC*
Wall Street Plaza
88 Pine Street 29th Floor
New York, New York 10005
(212) 376-6574
npchrysanthem@mdwcg.com
mmnudelman@mdwcg.com

**CERTIFICATE OF SERVICE**

I, Maria Nudelman, hereby certify that on August 6, 2026, a copy of the foregoing document was filed electronically and served by e-mail to all parties of record via ECF.

*/s/ Maria Nudelman*
Maria Nudelman